BEER, Judge.
Mrs. Josephine C. Bonvillian sued the Louisiana Coca-Cola Bottling Company, Ltd. (hereafter, “company”), its president, its secretary, its Retirement Plan Committee and the individual members thereof, and the company’s employee, S. V. Yallot, seeking funds allegedly due her by reason of her status as widow and beneficiary of her deceased husband who had been a participant in the retirement plan for employees of the company. After trial on the merits, the district court entered judgment in favor of defendants, dismissing plaintiff’s suit and holding that:
“The evidence indicates that the plaintiff did not elect to adopt the new retirement program.”
Mrs. Bonvillian devolutively appeals. We affirm.
Joseph E. Bonvillian, the deceased husband of petitioner, had been an employee of Louisiana Coca-Cola Bottling Company, Ltd. for approximately 30 years. As such, he was covered by various employee benefit plans which made provision — depending upon circumstances — for short term disability income, long term disability income, group life insurance, group health insurance as well as “early” or at-age-65 retirement benefits. Premiums to cover these various contingent programs were, essentially, paid by the company except that Mr. Bonvillian had opted to pay for an additional $6,000 of life insurance coverage over the $9,000 paid for by the company. When Mr. Bonvillian reached his 55th birthday in 1962, he became eligible for early retirement under the existent plan but did not choose to exercise this option. He continued as a full time employee until 1970 when he became ill and, as a result, exercised his right to a disability leave of absence because of illness. At that time, in addition to payments of $50 a week during 13 weeks of so-called short term disability, he received benefits under the hospitalization plan for hospital costs, doctor’s fees and prescription costs. Though his short term disability plan benefits were exhausted by his continued illness, he then, in accordance with the plan, became eligible for long term disability benefits of approximately $206 per month. He submitted the necessary request for the payment of these benefits and received same until he died on April 23,1971.[1] Upon his death, his wife (appellant, here) received the proceeds of the $15,000 [2] life insurance coverage previously referred to. However, since Mr. Bonvillian had not elected to retire early, and died before reaching 65, the ordinary retirement age, the company rejected the claim by his widow that she was entitled to receive monthly retirement benefits under the company’s early retirement plan in the amount of $92 per month for a period of ten years. That rejection precipitated this litigation.
Appellant’s able counsel vigorously contends that Mr. Bonvillian’s vested interest (uncontested) in the plan constituted an irrevocable entitlement to retirement benefits by him and, upon his death, by his widow. Furthermore, he contends that portions of the plan requiring interpretation must be interpreted against the company and, finally, that the company breached its duty to make clear the provisions, advantages and disadvantages of the plan so that Mr. Bonvillian might have made a more prudent election — if, indeed, any election was necessary. We disagree.
At the time that Mr. Bonvillian exhausted his entitlement to short term disability payments by reason of his continued and unabated disability, he was notified by the company of his right to continued payments — under the long term disability coverage provisions of the benefit plan — pro *1351 vided only that he tender to the company evidence of his continued disability.
There were many advantages to his opting in this direction, not the least of which was the payment of $206 per month during the long term disability as well as continuation of hospitalization coverage and life insurance coverage. However, counsel for Mrs. Bonvillian insists that the company should have more affirmatively delineated Bonvillian’s right — as of that time — to opt for early retirement. Had this option been exercised and approved, the result would have been markedly reduced payments to Bonvillian of $92 per month (in lieu of $206 per month and other benefits), but such payments, instead of continuing only during Bonvillian’s lifetime, would have continued to his widow until a total of ten years of payments had been made.
The record indicates, and the trial judge apparently concluded, that the options were fully explained.
About the time that Bonvillian’s request for long term disability payments was forwarded to the company, the company’s agent, Mr. Vallot, met with Mr. Bonvillian’s son and only child, who, himself, is controller and internal auditor for Edwards Engineering Company of Atlanta, Georgia and a mature father of three children, one of whom was attending school in New Orleans at the time. Vallot’s testimony is clear and unequivocal regarding that meeting:
“Q. What did you explain to him?
A. I explained to him what the long term disability situation was as opposed to the early retirement.”
Pretermitting, arguendo, the prescriptive issue vigorously raised by able counsel for appellee, we find no breach of any fiduciary duty on the part of the company. To hold otherwise would, on the facts here found, require the company not only to have advised Mr. Bonvillian or his representative (in this case, his son) what alternatives were available but also which option should, in fact, be chosen on the basis of Bonvilli-an’s questionable life expectancy. Though the medical reports and other data available to the company indicate that, among other problems, Bonvillian had cancer, there is no indication that the company knew or should have known that death was imminent, and we find no basis for imposing an obligation on the company to have gone to the extent of making such determination and advising on the basis of same in the reasonable operation of its coordinated employee benefit program. To impose such a burden would, we believe, have the effect of discouraging rather than encouraging employee benefit programs by imposing an unreasonable fiduciary responsibility.
Finally, for such consideration as a reviewing court may wish to give, we take notice of Gediman v. Anheuser Busch, Inc., 299 F.2d 537 (2d Cir. 1962), and the reliance therein on Section 552 of the Restatement of Torts to form the basis for concluding that relationships such as that which existed in this case between the company and Bonvillian are “. . . plainly of the sort, described in the Restatement, where negligent communication, or failure to communicate with clarity, may give rise to liability. . . .” (Emphasis ours.) Thus, in our view, LSA — C.C. art. 3536, would apply, and the plea of prescription urged by the company but overruled by the trial court should have been maintained.
The judgment is affirmed, at appellant’s cost.

AFFIRMED.

REDMANN, J., dissents.

. When Mr. Bonvillian died on April 23, 1971, the retirement plan for employees of the company was a new plan (adopted April 1, 1971), but it did not change the basic benefits which Mr. Bonvillian was entitled to receive and — insofar as the critical facts of this case are concerned — was essentially unchanged from the overall plan long in effect.

. When Mr. Bonvillian died, his group life insurance coverage of $15,000 was far in excess of the amount which had accrued to his benefit in the retirement plan ($4,912.15). Thus, the $15,000 payment constituted the “Minimum Death Benefit” as provided for in the plan.